### STATE OF CONNECTICUT *v.* LUIS ALFONSO (2859)

HULL, BORDEN and SPALLONE, Js.

226

Argued November 13, 1984—decision released January 29, 1985

*Richard E. Arnold,* for the appellant (defendant).

*C. Robert Satti, Jr.,* assistant state's attorney, for the appellee (state).

SPALLONE, J. After a jury trial, the defendant was convicted of carrying a pistol without a permit in violation of General Statutes § 29-35 and of altering or removing a pistol identification number in violation of General Statutes § 29-36. On appeal, he claims that the trial court erred in admitting into evidence the results of a scientific test and in denying his motion for a new trial.

The jury could reasonably have found the following facts: On April 23, 1983, Officer Joseph Horesco of the Bridgeport police department was patrolling a housing project on foot when he heard a gunshot. About thirty to fifty feet away from him, he saw three men running and carrying what appeared to be rifles or shotguns. Horesco chased one of the men, who was later identified as the defendant, into a building. During the chase, Horesco noticed that the defendant was carrying what appeared to be a .38 caliber revolver. After

the defendant was apprehended on the third floor of the building, he was searched and no weapon was found. Horesco noticed, however, that the defendant had blood on his right hand. After the arrest, Horesco searched the hallways of the building and found a gun in a cinderblock windowsill on the second floor.

At trial, Horesco testified that the gun was wet with what appeared to be blood on the right side near the trigger. He also testified that the gun, which was placed in evidence by the state, was the same gun he found in the cinderblock windowsill. Trooper Robert Mills of the state forensic laboratory testified that he tested the gun for the presence of blood, that he found human blood on the weapon, that the amount of blood was insufficient for blood grouping, and that the test he performed was destructive of the sample. He opined, however, that if the defense were to run tests on the weapon, they might be able to ascertain whether blood was found there.

The defendant's argument as to the admissibility of evidence in connection with the test is based on Practice Book § 738, which provides: "If a scientific test or experiment to be performed upon any object which has been the *subject of a disclosure order* may preclude or impair any further tests or experiments, the opposing party and any other person known to have or believed to have an interest in the matter shall be given reasonable notice and opportunity to be present and to have an expert observe or participate in the test or experiment, unless the judicial authority for good cause shall order otherwise." (Emphasis added.) The defendant contends that a supplemental motion for discovery and production which he filed gave rise to the necessary disclosure order but that he was never given notice of the test.[1]

[1] The defendant learned that tests were to be conducted on the blood samples on the weapon during open file discovery provided by the state in

There is some uncertainty in the record as to whether the defendant's supplemental motion for discovery and production was ever acted upon by the court. Nonetheless, even if the court granted the motion, as the defendant contends it did, we find that the defendant's claim has no merit. In his supplemental motion for discovery and production, the defendant requested that the court order the prosecuting authority "to disclose in writing the existence of, and to allow the defendant to inspect, copy, photograph and have reasonable tests made on the following items, materials, requests and interrogatories: (1) Copies of results or reports of any scientific tests, experiments, or comparisons made in connection with the particular case . . . more specifically, but not limited to any and all, tests regarding the taking of blood samples from the alleged weapon . . . ." The subject of the request was not the gun or the blood on the gun, but copies of results or reports of any tests, experiments or comparisons. Consequently, even if an order had been issued based on that motion, the defendant would not have been entitled to advance notice of the test or an opportunity to be present pursuant to Practice Book § 738. As it was, the state complied with the supplemental motion for discovery and production on November 4, 1983, when it furnished the defendant with a copy of the state forensic laboratory's report setting forth the results of the test. The defendant's motion did not put the state or the court on adequate notice that he was requesting prior notice of the test and the right to have an expert to be present at or to participate in it.

response to a May 27, 1983 motion by the defendant for discovery and production. Although the record is not altogether clear on this point, it appears that the defendant moved for supplemental discovery and production after learning at the open file discovery procedure that the tests were imminent. The defendant's supplemental motion for discovery and production was dated June 20, 1983.

The defendant also argues that because the test, which established that the substance on the gun was human blood, consumed the entire blood sample, he was deprived of the opportunity to present exculpatory evidence by showing that his blood type differed from that of the sample on the gun. The fact that human blood was found on the weapon in a place that matched the area of the defendant's hand where blood was found was unquestionably inculpatory. The defendant avers that if he had an opportunity to test the sample he might have been able to establish that, on the basis of blood type, it was not his. The defendant, however, offered no evidence and made no offer of proof that the amount of blood on the weapon was sufficient, if properly tested, to establish blood type. In the absence of such proof or offer, the defendant's claim was speculative. See *State* v. *Asherman,* 193 Conn. 695, 726, 478 A.2d 227 (1984).

In *State* v. *Asherman,* supra 723–726, our Supreme Court has provided us with a thorough review and a detailed analysis of the consequence of the consumption of blood samples during scientific testing. The court, quoting *State* v. *Kersting,* 50 Or. App. 461, 623 P.2d 1095, 1103–1104 (1981), stated that "where evidence sought to be disclosed has been functionally destroyed, but was subjected to scientific testing by the state prior to its destruction, a defendant must show that a retest would have been possible and must challenge the state's test results, either by attacking the manner in which the test was conducted or by other evidence." *State* v. *Asherman,* supra, 725. The defendant has not attacked the state's findings nor has he offered any evidence that further testing would have resulted in the discovery of exculpatory evidence.

The defendant makes no claim that the state acted in bad faith or engaged in prosecutorial misconduct. The state disclosed its findings to the defendant, and

the court granted the defendant a continuance so that his own expert could examine the gun. Although the presence of human blood on the weapon was admittedly inculpatory, Mill's testimony that the sample was insufficient to allow classification by blood type was, to a degree, exculpatory.

The admission of evidence of experiments, demonstrations or tests rests in the sound discretion of the trial court. *Marko* v. *Stop & Shop, Inc.*, 169 Conn. 550, 561, 364 A.2d 217 (1975). The granting of a motion for a new trial also rests within the court's discretion. A motion for a new trial may be granted "in the interests of justice" for constitutional or other material injurious error. Practice Book § 902. There was no such error here. Under the circumstances of this case, we hold that the trial court did not abuse its discretion in admitting evidence as to the test or in denying the defendant's motion for a new trial.

There is no error.

In this opinion the other judges concurred.

