STATE OF CONNECTICUT *v.* KERMIT FRANCIS
(SC 15633)

Callahan, C. J., and Borden, Berdon, Norcott and McDonald, Js.

Argued May 27—officially released August 18, 1998

*Mark Rademacher*, assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Dennis J. O'Connor*, senior assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Kermit Francis, was convicted by a jury of murder in violation of General

Statutes § 53a-54a (a),[1] carrying a pistol without a permit in violation of General Statutes § 29-35,[2] and altering or removing an identification mark on a pistol in violation of General Statutes § 29-36.[3] The defendant appeals[4] from the judgment of the trial court.[5] He claims that the trial court improperly: (1) refused to allow him to introduce evidence that two key state's witnesses were gang members, in violation of his constitutional rights

[1] General Statutes § 53a-54a provides in relevant part: "Murder. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime. . . ."

[2] General Statutes § 29-35 provides in relevant part: "Carrying of pistol or revolver without permit prohibited. Exceptions. (a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . .

"(b) The holder of a permit issued pursuant to section 29-28 shall carry such permit on his person while carrying such pistol or revolver."

[3] General Statutes § 29-36 provides: "Altering or removing identification mark. No person shall alter, remove or obliterate the name of any maker or model or any maker's number or other mark of identification on any pistol or revolver. The possession of any pistol or revolver upon which any identifying mark, number or name has been altered, removed or obliterated shall be prima facie evidence that the person owning or in possession of such pistol or revolver has altered, removed or obliterated the same."

[4] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony . . . for which the maximum sentence which may be imposed exceeds twenty years . . . ." Section 51-199 (b) has since been amended by Public Acts 1997, No. 97-178, § 2.

[5] The trial court sentenced the defendant to sixty years imprisonment on the murder conviction and five years imprisonment on the remaining two counts, to be served concurrently, for a total effective sentence of sixty years imprisonment.

to due process, to confrontation and to present a defense; (2) determined that the evidence was sufficient to support his conviction under § 29-36; (3) instructed the jury on the presumption set forth in § 29-36; and (4) instructed the jury on the intent element of murder. We affirm the judgment of the trial court with regard to the defendant's first and fourth claims, we do not reach the defendant's second claim, and we reverse the judgment of the trial court on the defendant's third claim. Because we conclude that the trial court improperly instructed the jury regarding the presumption set forth in § 29-36, we remand the case for a new trial on the charge of altering or removing an identification mark on a pistol.

A jury reasonably could have found the following facts. On December 20, 1993, the defendant, along with Casey Wilcox, Andre Shirley and Corey Rosemond, were selling crack cocaine in the area of Wilcox's residence at 88 Atwood Street in Hartford. The victim, Moses Barber, Jr., a regular customer, purchased drugs from the defendant. After making his purchase, he walked away. The victim later returned to Wilcox's porch and engaged in an argument with the defendant concerning the drug sale. The victim and the defendant left the porch and the defendant proceeded up a dark driveway between two buildings directly across the street from Wilcox's residence. The victim remained near the street. As they continued to argue, the defendant approached the victim and shot him. The victim died later that night as a result of a gunshot wound to his abdomen.

On December 21, 1993, Wilcox asked the defendant for his guns for the purpose of threatening an individual who had accused Wilcox of shooting the victim. The defendant went into the basement of a house on Atwood Street,[6] and emerged with a handgun and rifle, which

---

[6] It is not clear from the record who owned or lived in this house.

he gave to Wilcox. Wilcox, in turn, gave the weapons to Rosemond and instructed Rosemond to put the weapons in the trunk of a vehicle[7] parked behind Wilcox's residence. The next morning, Hartford police officers, armed with a search warrant, seized the weapons from the trunk of the vehicle and, thereafter, learned that the defendant did not have a permit to carry a pistol or revolver. Moreover, the police officers found that the serial number on the pistol had been ground off.

Thereafter, Wilcox, Shirley and Rosemond gave statements implicating the defendant in the murder, and a warrant was issued on December 23, 1993, for the defendant's arrest. The defendant was arrested in New York in June, 1995. Additional facts will be discussed in the context of the defendant's specific claims.

I

The defendant first claims that the trial court improperly limited his cross-examination of Wilcox, Shirley and Rosemond regarding the alleged gang membership of Wilcox and Rosemond, thus limiting the defendant's ability to present a defense, and to confront and cross-examine these witnesses in violation of his due process rights and his right to confrontation as guaranteed by the federal and state constitutions.[8] The defendant

---

[7] It is not clear from the record who owned this vehicle.

[8] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

Article first, § 8, of the constitution of Connecticut, as amended by article twenty-nine of the amendments, provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; [and] to have compulsory process to obtain witnesses in his behalf . . . ."

"Because the defendant has failed to provide any independent analysis under the state constitution, we limit our review to the federal constitution."

argues that he sought to introduce evidence of Wilcox's and Rosemond's gang membership for two purposes: (1) to establish that they were lying; and (2) to establish that they falsely had accused the defendant of murder as a result of a territorial dispute regarding who could sell drugs in the area of Wilcox's residence. The state argues that the defendant had failed to establish a foundation for the admission of this evidence. In response, the defendant claims that a foundation is not necessary to introduce this evidence in order to establish that Wilcox and Rosemond were lying regarding their gang membership because evidence of untruthfulness is always admissible.[9] He claims further that, although

*State* v. *Porter*, 241 Conn. 57, 133 n.77, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998).

[9] The defendant argues that no foundation is required to introduce extrinsic evidence in order to demonstrate that the witness is "lying under oath." He argues that despite having failed to establish the necessary predicate of a relationship between gang membership and the murder, the trial court should have permitted him to cross-examine Rosemond and Wilcox about their membership in the 20 Love gang. If they denied membership, he could then introduce Shirley's testimony that they were members. If they admitted membership, he could introduce their probable cause hearing testimony to contradict their testimony. Either way, he argues, he should have been permitted to introduce evidence to contradict their sworn testimony and thereby impeach their credibility. This claim is based on an erroneous understanding of the rules of evidence.

"As a general rule, extrinsic evidence of a prior inconsistent statement may not be admitted to impeach the testimony of a witness on a collateral matter. *State* v. *Colton*, 227 Conn. 231, 247, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). Thus, on cross-examination, a witness' answer regarding a collateral matter is conclusive and cannot be contradicted later by extrinsic evidence. Id., 248; C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.24.4, p. 211; 1 C. McCormick, Evidence (4th Ed. 1992) § 49, pp. 182–83. Extrinsic evidence of a prior inconsistent statement may be admitted, however, to impeach a witness' testimony on a *noncollateral* matter. *State* v. *Colton*, supra, 247; *State* v. *Burns*, 173 Conn. 317, 327, 377 A.2d 1082 (1977); 1 C. McCormick, supra, § 36, p. 118 and § 49, p. 183. A matter is not collateral if it is relevant to a material issue in the case apart from its tendency to contradict the witness. . . . The determination of whether a matter is relevant to a material issue or is collateral generally rests within the sound discretion of the trial court. *State*

evidence of bias against the defendant requires some foundation, that foundation had been established. We conclude that this issue is not reviewable because the trial court did not make a ruling.

The following additional facts are necessary to our resolution of this issue. During the probable cause hearing, Rosemond and Wilcox testified that they were not members of a gang known as "20 Love."[10] In contrast, Shirley testified that Rosemond and Wilcox not only were members of the gang, but that Wilcox was actually the president.[11] During the trial, prior to the testimony

---

v. *Colton*, supra, 247; *State* v. *Burns*, supra, 327–28." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Valentine*, 240 Conn. 395, 403, 692 A.2d 727 (1997).

The trial court properly deferred the defendant's inquiry into the witnesses' involvement with 20 Love until he could establish a nexus that would render such an inquiry relevant. If the defendant had established that the defendant was "set up" because of a controversy regarding the sale of drugs in front of Wilcox's house, the matter would have been noncollateral. The defendant's theory, however, was belied by testimony that the defendant was a friend of Wilcox and was permitted to sell drugs outside Wilcox's home.

[10] Wilcox's testimony at the probable cause hearing provided in relevant part:

"[Defense Attorney William Collins]: OK. Now, are you a member, or were you at that time, a member of any recognized gang?

"[Wilcox]: No."

Rosemond's testimony at the probable cause hearing provided in relevant part:

"[Collins]: And you and [Wilcox] were members of a gang, weren't you?

"[Rosemond]: No.

"Q. The—what is it—a gang known as '20 Love'? No?

"A. Could you repeat the question?

"Q. You and he were members of a gang that you referred to as '20 Love'?

"A. No.

"Q. Never?

"A. No."

[11] Shirley's testimony at the probable cause hearing provided in relevant part:

"[Defense Attorney William Collins]: All right. And you and [Wilcox], are you both in the same club? Do you have a club?

"[Shirley]: No.

"Q. You don't have an organization that you call, '20 Love'?

"A. Nope.

of these witnesses, the state made an oral motion in limine to prevent any cross-examination by the defendant of these witnesses regarding their membership in 20 Love on the ground that such testimony would not be relevant to any issue in the case and would exceed the scope of direct examination since the state did not intend to elicit this information on direct examination. The defendant, in opposition, sought to introduce such testimony for two distinct purposes: (1) to impeach the credibility of Rosemond and Wilcox, either by introducing Shirley's testimony that they were gang members if they denied it, or by introducing their probable cause hearing testimony in which they had denied gang membership if they now admitted it; and (2) to establish the defense that members of 20 Love falsely had accused him of murdering the victim in retaliation for the defendant's selling drugs in their territory.

"Q. No? Have you ever heard that phrase?
"A. Yes.
"Q. Is that some—is there such an organization as '20 Love'?
"A. Yes.
"Q. But you're not a member?
"A. Nope.
"Q. Never were a member?
"A. Nope.
"Q. And as far as you know, [Wilcox] was never a member? . . .
"A. Yes.
"Q. Yes, what? He was, or he wasn't?
"A. He was.
"Q. He was a member?
"A. Yes.
"Q. He was actually the president of it, wasn't he, at one time?
"A. I guess so. That's what he said. I'm not sure. I wasn't a member.
"Q. I see. Was he a member, as far as you knew on December 20, 1993?
"A. Yes.
"Q. I see. And what does that—being a member of 20 Love, what does that mean? What [do] members do?
"A. I'm not a member. I wouldn't know.

\* \* \*

"Q. OK. Incidentally, is [Rosemond] also a member of 20 Love?
"A. I think he is.
"Q. Yes. And he was at that time, right?
"A. Yes."

The trial court deferred ruling on the state's motion stating: "I can't resolve this at this point. I want to hear the direct [examination of Rosemond], and then you'll have the opportunity before you cross-examine. I may want to hear this out of the presence of the jury to see where you're going with this."

Following the state's direct examination of Rosemond, the defendant, out of the presence of the jury, summarized his offer of proof relating to his proposed questioning regarding Rosemond's gang membership. The defendant argued that this evidence was necessary to establish the credibility of Rosemond. The defendant expected Rosemond to testify that he was not a member of 20 Love. The defendant then would introduce Shirley's prior testimony from the probable cause hearing that Rosemond was a gang member to impeach Rosemond's credibility. This evidence would also establish that bad blood existed between Rosemond and the defendant as a result of the defendant's encroachment onto 20 Love's drug selling territory. The state responded that this evidence would be collateral, prejudicial and irrelevant.[12] The court, in a preliminary ruling stated, "you've got to get some connection between [Rosemond's] membership in the gang and some relevant issue." In response, the defendant conceded that a connection had not yet been made between gang membership and any relevant issue because no evidence had yet been introduced establishing that either the defendant or anyone else had been selling drugs that evening. Therefore, there was no foundation for the defendant's theory that he falsely had been implicated in this murder as a result of the witnesses' bias against the defendant stemming from a drug "turf war." The defendant *conceded*, "I won't press that, Your Honor. *I'll*

---

[12] The state did not object to questioning regarding whether Rosemond witnessed any drug sales that evening, or if Rosemond had feelings of bias toward the defendant. The state's objection rested solely on questioning regarding Rosemond's gang membership, especially in 20 Love.

*wait until my next witness, and then we can proceed there.*" (Emphasis added.) The court and the state agreed, however, that the defendant could cross-examine Rosemond regarding drug selling activity that evening. Upon doing so, Rosemond denied that either Wilcox or the defendant were selling drugs that evening.[13]

After the state's direct examination of the next witness, Shirley, the defendant did not make an offer of proof regarding the issue of gang membership. Instead, at the end of his cross-examination of Shirley, the defendant asked Shirley whether he, Wilcox, Rosemond and the defendant were "in competition with one another [in the sale of drugs] right on the corner, and there's no organization." Shirley responded, "[n]o organization, what [do] you mean organization?" The defendant clarified the question by asking "are you aware of an organization called 20 Love?" At that point, the state objected, arguing that questions regarding gang membership exceeded the scope of the direct examination. After the jury was excused, the court stated: "I've not heard anything yet that [the defendant] . . . sold anything that evening in that area . . . .[14] What has it got to do with 20 Love until some predicate, some basis for that has been laid out?" The defendant argued that the line of questioning regarding gang membership would become relevant after Wilcox had testified.

The court ruled that "on the basis of what has been offered so far . . . with this witness I'm going to sustain the objection of the state, and [the defendant's attorney] will have the right to test that question again after the testimony of . . . Wilcox." The court clarified

---

[13] In contrast, Shirley testified that he, Rosemond and Wilcox all sold drugs that evening. Although Shirley testified that the defendant was generally a drug seller, he did not testify that he witnessed the defendant sell drugs that evening to anyone, including the victim.

[14] See footnote 13 of this opinion.

that questioning regarding the gang membership of these witnesses might become relevant following Wilcox's testimony if Wilcox were able to establish a connection between the defendant and the drug selling activity at Wilcox's residence on the day of the victim's death. The state objected to the court's ruling, arguing that the defendant should be precluded from asking any questions at any time regarding gang membership or 20 Love. The state clarified that "I don't have a problem with asking questions generally speaking about drug trafficking going on that day or in general. I do have a problem with the mentioning of 20 Love. . . . [A]s long as . . . mention of a gang or the entity known as 20 Love is kept out . . . I would not have a problem with territoriality being explored. I just don't think that it's necessary to get the word gang or the name 20 Love [in] . . . ."

The defendant accepted the state's argument, stating: "Your Honor . . . taking up what [the state's attorney] has been saying, his offer that I certainly am permitted to talk about the control of territories, etcetera . . . so long as I do not mention gang or 20 Love or any specific gang, I may explore that then, and hopefully I won't mention any name. . . . I'm taking up the offer. I probably will do that, and I'm sure it will be all negative, and there will only be a few questions I'll ask him."

The defendant continued his cross-examination of Shirley, questioning him regarding drug selling territory. Shirley explained that he sold drugs at Wilcox's residence but others could not do so "if they wasn't from the neighborhood." He further explained that in order to sell drugs at Wilcox's residence, Wilcox's permission was needed: "You had to be a friend of [Wilcox's] to be there." Moreover, he explained that, in addition to himself, Wilcox and Rosemond, the only other person who could sell drugs at Wilcox's residence at that time was the defendant.

In his cross-examination of Wilcox, the last eyewitness to testify, the defendant did not ask any questions regarding Wilcox's membership in a gang. The defendant did, however, question Wilcox regarding the issues of territory and the control of drug sales at his residence, to which Wilcox explained that only his friends could sell in that area. He acknowledged that "if some stranger, somebody [he] didn't like came into the area, [he'd] say no, you can't sell them here; this is my place." He also testified that he, along with Rosemond, Shirley and the defendant, were selling drugs that evening. Moreover, he testified that he saw the victim purchase drugs from the defendant. After the defendant completed his cross-examination of Wilcox, he did not attempt to reexamine either Rosemond or Shirley on the issue of gang membership.

The defendant argues on appeal that the trial court violated his due process rights and his right to confrontation by ruling against him in his numerous attempts to question the witnesses regarding gang membership. The state argues that the defendant's claims are not appealable because the court did not make a ruling on the matter. We agree with the state.

"It is elementary that to appeal from the ruling of a trial court there must first be a ruling. . . . [T]his court cannot review a nonexistent ruling." (Citation omitted; internal quotation marks omitted.) *State* v. *Kindrick*, 30 Conn. App. 56, 60, 619 A.2d 1 (1993); see *Biggs* v. *Warden*, 26 Conn. App. 52, 57, 597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991) (court will not consider claimed errors that have not been raised and decided); see also General Statutes § 52-263 (right to appeal is from final judgment); *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983) (same).

The trial court had three opportunities to make a final ruling on the admissibility of evidence regarding

gang membership of Wilcox and Rosemond: (1) following the state's oral motion in limine; (2) following the state's direct examination of Rosemond; and (3) following the defendant's cross-examination of Shirley. Yet, the court refrained from doing so. At each point, the court allowed the defendant future opportunities to present additional evidence in order to establish the relevancy of questions relating to gang membership. Following the state's motion in limine, the court stated: "I can't resolve this at this point. I want to hear the direct, and then you'll have the opportunity before you cross-examine." Following the state's direct examination of Rosemond, the court instructed the defendant that he had to establish "some connection between [Rosemond's] membership in the gang and some relevant issue" in order to cross-examine Rosemond about his involvement in 20 Love. Lastly, following the defendant's cross-examination of Shirley, the court sustained the state's objection to the defendant's questions regarding 20 Love, but gave the defendant the right to ask such questions again *after* Wilcox's testimony, in response to the defendant's explanation that the relevancy of gang membership would be apparent at that point.

As in *State* v. *Barletta*, 238 Conn. 313, 332, 680 A.2d 1284 (1996), the trial court in the present case "concluded only that the defendant had not *as yet* laid the proper foundation for such cross-examination; at no time did the court indicate that the defendant was prohibited from renewing that line of questioning at an appropriate time. . . . [T]he ruling of the trial court was a preliminary one, subject to reconsideration if and when the defendant established the relevance of the testimony that he sought to adduce . . . ." (Emphasis in original.) Significantly, the defendant never sought follow-up questioning of *any* of these witnesses and, presumably, chose to abandon this line of inquiry. See

id. Accordingly, because the trial court had ruled only preliminarily and allowed the defendant the opportunity to renew this line of questioning once its relevancy had been established, we conclude that this issue is not reviewable.

II

The defendant next claims that the trial court improperly instructed the jury regarding the presumption contained within § 29-36. Section 29-36 provides in relevant part: "The possession of any pistol . . . upon which any identifying mark, number or name has been altered, removed or obliterated shall be prima facie evidence that the person owning or in possession of such pistol . . . has altered, removed or obliterated the same." The defendant argues that the court's instructions created an unconstitutional mandatory presumption relieving the state of its burden of establishing the elements of this offense beyond a reasonable doubt. The defendant also argues that even if the court's instructions created only a permissive inference, such permissive inference was unconstitutionally applied because the altered pistol was found in the possession of a third party, Wilcox, and not in the defendant's possession.

The trial court's instructions to the jury on § 29-36 provided in relevant part: "The state charges [the defendant] with the crime of altering or removing an identification mark in violation of our law. It further alleges that on an unknown date prior to December 20, 1993, at a time before 7:07 p.m. [the defendant] altered, removed or obliterated the maker's number or other mark of identification on a pistol in violation of our law.

"For you to find the defendant guilty of this charge the state must prove beyond a reasonable doubt that the

defendant altered, removed or obliterated the maker's number or other mark of identification on the pistol
. . . .

"For the purpose of determining whether the state has proven this essential element beyond a reasonable doubt, the possession of a pistol upon which any identifying mark or number has been altered, removed or obliterated, it shall be prima facie evidence that the person owning or in possession of the pistol has altered, removed or obliterated the same.

"The phrase prima facie evidence means evidence which if credited is sufficient to establish the fact or facts which it is adduced to prove. . . .

"There are two elements then to prove this charge of altering or removing an identification mark, and each must be proved beyond a reasonable doubt. First, that the defendant was either the owner or possessor of the pistol . . . and two, prior to December 20, 1993, during such ownership or possession of the pistol that the pistol was found to have its maker's number or other mark of identification removed, obliterated or altered."

The state concedes that, although the defendant failed to raise this claim at trial, it is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[15] See *State* v. *Gerardi*, 237 Conn. 348, 355–56,

---

[15] In *State* v. *Golding*, supra, 213 Conn. 239–40, this court concluded that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.)

677 A.2d 937 (1996). Moreover, the state concedes that this instruction misled the jury because it interpreted the inference in § 29-36 to be mandatory and, therefore, that the defendant is entitled to a new trial on this issue.

This court previously has reasoned that "[t]he Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. . . . This bedrock, axiomatic and elementary [constitutional] principle . . . prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. . . .

"A mandatory presumption instructs the jury that it *must* infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury that a possible conclusion *may* be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

"Mandatory presumptions . . . violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense. . . . A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Gerardi*, supra, 237 Conn. 356–57. This court previously has stated that presumptions will be construed as permissive inferences in order to preserve them in a constitutional manner. See id., 358.

We agree that the trial court's instructions to the jury on the offense of altering or removing a pistol's identification mark, viewed in their entirety, presented

the statutory inference as mandatory, thereby misleading the jury.[16] See *State* v. *Hines*, 243 Conn. 796, 818–19, 709 A.2d 522 (1998) (" 'a jury instruction is to be examined in its entirety, and . . . the test to be applied is whether the charge as a whole presents the case to the jury so that no injustice will be done' "); *State* v. *Ortiz*, 217 Conn. 648, 667, 588 A.2d 127 (1991) (challenge to jury instruction requires review to determine whether it is reasonably possible that jury was misled). The trial court, in essence, mandated that the jury find the defendant guilty if it found that the defendant either owned or possessed the pistol and that during such ownership or possession the pistol's identification mark was removed, obliterated or altered. The court did not give the jury the option to reach a different conclusion if these predicate facts were proven. Consequently, the defendant is entitled to a new trial on this issue with instructions that this inference is permissive and not mandatory.[17]

---

[16] We, therefore, also agree with the defendant's claim that "the jury should not have been told that it could rely exclusively on [the presumption in § 29-36] to convict [the defendant]" and that the court's instruction that possession was "prima facie evidence" of alteration was misleading and improper.

To the extent that *State* v. *Strickland*, 42 Conn. App. 768, 775, 682 A.2d 521 (1996), rev'd on other grounds, 243 Conn. 339, 703 A.2d 109 (1997), held to the contrary, it is disapproved.

[17] "Although we generally evaluate the sufficiency of the evidence claim first because, were the [state] to prevail on that claim, the [defendant] would not be entitled to a new trial . . . we need not do so in this case." (Citation omitted.) *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 242 n.31, 694 A.2d 1319 (1997). In light of our interpretation of the presumption in § 29-36 as permissive and not mandatory, we conclude that the jury reached its verdict based on an improper instruction concerning the force and weight of this presumption. "Consequently, although the standard governing our review of sufficiency of the evidence is to evaluate the evidence construing it in the light most favorable to sustaining the facts expressly and impliedly found by the jury . . . we cannot presume the sufficiency of the evidence on which the jury based its verdict in light of the improper instruction." (Citation omitted.) Id. We cannot presume that the jury would have reached the same conclusion had it been properly instructed on the law. Accordingly, we need not reach the defendant's sufficiency claim. See id. (defendants'

The defendant also claims that even if we were to construe the inference in § 29-36 as permissive, it is nonetheless unconstitutional because the altered pistol was not found in his possession. We disagree. When reviewing the constitutionality of a permissive inference, we consider whether "under the facts of the case, there is no rational way the trier could make the connection permitted by the inference . . . [f]or only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination." (Internal quotation marks omitted.) *State* v. *Gerardi*, supra, 237 Conn. 358. In the present case, a jury rationally and reasonably could connect the defendant's possession of the pistol with its alteration.[18]

## III

The defendant's final claim is that the trial court improperly instructed the jury regarding the intent element of murder in violation of his fundamental due process rights under the federal and state constitutions to have the state prove each element of an offense

sufficiency claim not reached because court concluded that jury reached verdict based on improper instruction concerning parties' respective burdens of proof).

[18] We reject the defendant's claim that the statutory presumption set forth in § 29-36 was inapplicable because the state did not present direct evidence that the defendant altered, removed or obliterated the pistol's identifying mark. The defendant argues that the presumption does not apply if the altered pistol is found in the possession of a third party. We disagree. Circumstantial evidence is as probative of guilt as direct evidence; see *State* v. *Henning*, 220 Conn. 417, 420–21, 599 A.2d 1065 (1991); *State* v. *John*, 210 Conn. 652, 660, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); and it is the function of the jury to weigh this evidence. Moreover, § 29-36 does not, by its language, limit application of the inference to situations in which the accused is in actual possession of a pistol. See *State* v. *Alfonso*, 3 Conn. App. 225, 226–27, 486 A.2d 1136 (1985) (defendant convicted under § 29-36 where altered gun found in cinder block windowsill of second floor of building).

charged against him.[19] Specifically, the defendant argues that the trial court erroneously stated that intent could be established by proof that the defendant had the intent to shoot the victim instead of the intent to kill the victim. The defendant contends that a portion of the definition of intent improperly permitted the jury to find him guilty of murder if it found that he had the intent to engage in the conduct of firing his weapon.[20]

---

[19] See footnote 8 of this opinion.

[20] The trial court's instructions to the jury provided in relevant part: "In the first count [the defendant] is charged with murder. The state alleges that on or about December 20, 1993, at about 7:07 p.m. at or near 87-89 Atwood Street, Hartford, Connecticut, [the defendant] with intent to cause the death of [the victim] did cause the death of [the victim] by shooting him with a handgun in violation of our statute involving murder, [§] 53a-54a.

"Insofar as it applies in this case the statute reads as follows: A person is guilty of murder when with intent to cause the death of another person he causes the death of such person. There are two elements, each of which the state must prove beyond a reasonable doubt in order to sustain a conviction in this case. First, that the defendant had the intent to cause the death of another person, that is, [the victim]; secondly, that acting with that intent he caused the death of that person. . . .

"The first element is that the defendant had the intent to cause the death of [the victim]. Our statute provides that a person acts intentionally with respect to a result or to conduct described by the statute defining an offense when his conscious objective is to cause such result or to engage in such conduct. . . .

"[A] person's intention may be inferred from his conduct. You may infer from the fact that the accused engaged in conduct that he intended to engage in that conduct. This inference is not a necessary one, that is, you are not required to infer intent from the accused's conduct, but it is an inference that you may draw if you find it is a reasonable and logical inference.

"So, intent then is a mental process which ordinarily can be proved only by circumstantial evidence. An intent to cause death may be inferred from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of ammunition used, the type of wound inflicted, the distance between the parties at the time of the shooting and the events leading up to and immediately following the death of the victim. I remind you that the state has the burden of proving beyond a reasonable doubt that the defendant intended to kill [the victim].

"The second element is that the defendant acting with the intent to cause the death of [the victim] caused his death. . . .

"To summarize then, in order for you to convict the defendant of the crime of murder, the first count in this information, the state must have

This claim, which the defendant raises under *State* v. *Golding*, supra, 213 Conn. 239–40,[21] or alternatively, pursuant to the plain error doctrine,[22] is unavailing.

The defendant's claim is foreclosed by our decision in *State* v. *Prioleau*, 235 Conn. 274, 321–22, 664 A.2d 743 (1995), wherein we concluded that an instruction, almost identical to that at issue here, did not warrant reversal. In *State* v. *Prioleau*, supra, 322, the trial court instructed the jury on the entire statutory definition of intent, referring to both intent to cause a result, death, and intent to engage in proscribed conduct, shooting. Yet, we concluded that the instruction, viewed in its entirety, was not misleading because the trial court "repeatedly instructed the jury that in order to find the defendant guilty of murder, it first had to find that he had intended to cause the death of the victim." Id. The present case is indistinguishable because, although the trial court provided the entire statutory definition of intent in its instruction, it also repeatedly instructed that in order to find the defendant guilty of murder, the jury had to conclude that the defendant had intended to cause the death of the victim. See *State* v. *Austin*, 244 Conn. 226, 232–37, 710 A.2d 732 (1998) (no error where trial court read entire statutory definition of intent in murder trial because entire instruction was such that jury would not be misled); *State* v. *Jaynes*, 36 Conn. App. 417, 426–31, 650 A.2d 1261 (1994), cert.

___

proved beyond a reasonable doubt the following elements: One, that the defendant had the intent to cause the death of another person, that being [the victim], and two, acting with that intent he caused the death of [the victim]."

[21] See footnote 15 of this opinion.

[22] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

denied, 233 Conn. 908, 658 A.2d 980 (1995) (where similar instruction given by trial court, Appellate Court concluded no constitutional violation).

The judgment is reversed with respect to the conviction of altering or removing an identification mark on a pistol and the case is remanded for a new trial on that charge; the judgment is affirmed with respect to the conviction of murder and carrying a pistol without a permit.

In this opinion the other justices concurred.