******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# KERMIT FRANCIS *v.* COMMISSIONER OF CORRECTION
## (AC 39445)

DiPentima, C. J., and Lavine and Pellegrino, Js.

*Syllabus*

The petitioner, who had been convicted of, inter alia, murder in connection with a shooting that occurred following a drug transaction, filed a third petition for a writ of habeas corpus, claiming that the habeas counsel who had represented him with respect to his second habeas matter had rendered ineffective assistance by failing to question a potentially exculpatory witness, K, properly and to present evidence that K had been available to testify at his criminal trial. K, who testified at both the petitioner's second and third habeas proceedings, recalled that she had seen the victim standing on a porch when she saw a spark of light without audible accompaniment. She later observed the victim on the ground. K testified that she never saw the actual shooting and did not hear a gunshot, and she was inconsistent in her recollection of the sequence of events. At the criminal trial, evidence had been adduced that an individual on the porch had used a cigarette lighter to light the petitioner's marijuana cigar shortly before the shooting occurred in a nearby driveway and that other witnesses had heard the gunshot. The habeas court determined that, had K's testimony been introduced at the criminal trial, it would not have undermined the court's confidence in the petitioner's conviction, and rendered judgment denying the third habeas petition. Thereafter, the habeas court granted the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court properly denied the petitioner's third petition for a writ of habeas corpus; that court's findings were supported by the evidence and were not clearly erroneous, as the witnesses at the criminal trial were consistent with one another and were bolstered by statements that had been given in the immediate aftermath of the crime, and other evidence, including the petitioner's flight to New York under an alias, suggested his guilt, the habeas court carefully weighed K's testimony against that evidence and found it to be not credible, as K's testimony at the habeas trial was inconsistent with her prior statements and with other witnesses' recollections, and the habeas court having properly determined that, in light of all the other evidence, K's testimony would not have led a reasonable jury to find the petitioner not guilty, the petitioner could not prove that he was prejudiced by his prior habeas counsel's purportedly deficient performance at the second habeas trial in questioning K improperly or in failing to present evidence of her availability to testify at the original criminal trial, or both.

Submitted on briefs February 22—officially released June 12, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Sferrazza, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Donald F. Meehan* and *Walter C. Bansley IV* filed a brief for the appellant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney, *Gail P. Hardy*, state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, filed a brief for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Kermit Francis, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The habeas court granted his petition for certification to appeal to this court; he claims on appeal that he was prejudiced as a result of the ineffective assistance of his erstwhile habeas counsel, Michael Day. Specifically, the petitioner argues that, at his habeas trial, Day failed (1) to question a witness properly and (2) to present evidence of that witness' availability to testify at the original criminal trial. We affirm the judgment of the habeas court.

The following facts, as summarized by our Supreme Court on the petitioner's direct appeal, are relevant. "On December 20, 1993, the [petitioner], along with Casey Wilcox, Andre Shirley and Corey Rosemond, were selling crack cocaine in the area of [Wilcox'] residence at 88 Atwood Street in Hartford. The victim, Moses Barber, Jr., a regular customer, purchased drugs from the [petitioner]. After making his purchase, he walked away. The victim later returned to [Wilcox'] porch and engaged in an argument with the [petitioner] concerning the drug sale. The victim and the [petitioner] left the porch and the [petitioner] proceeded up a dark driveway between two buildings directly across the street from [Wilcox'] residence. The victim remained near the street. As they continued to argue, the [petitioner] approached the victim and shot him. The victim died later that night as a result of a gunshot wound to his abdomen.

"On December 21, 1993, Wilcox asked the [petitioner] for his guns for the purpose of threatening an individual who had accused Wilcox of shooting the victim. The [petitioner] went into the basement of a house on Atwood Street, and emerged with a handgun and rifle, which he gave to Wilcox. Wilcox, in turn, gave the weapons to Rosemond and instructed Rosemond to put the weapons in the trunk of a vehicle parked behind [Wilcox'] residence. The next morning, Hartford police officers, armed with a search warrant, seized the weapons from the trunk of the vehicle and, thereafter, learned that the [petitioner] did not have a permit to carry a pistol or revolver. Moreover, the police officers found that the serial number on the pistol had been ground off.

"Thereafter, Wilcox, Shirley and Rosemond gave statements implicating the [petitioner] in the murder, and a warrant was issued on December 23, 1993, for the [petitioner's] arrest. The [petitioner] was arrested in New York in June, 1995." (Footnotes omitted.) *State* v. *Francis*, 246 Conn. 339, 342–43, 717 A.2d 696 (1998).

Following a trial, a jury found the petitioner guilty of murder in violation of General Statutes (Rev. to 1993)

§ 53a-54a (a), carrying a pistol without a permit in violation of General Statutes (Rev. to 1993) § 29-35 and altering or removing an identification mark on a pistol in violation of General Statutes (Rev. to 1993) § 29-36. See *State* v. *Francis*, supra, 246 Conn. 341–42. The trial court, *Barry*, *J.*, sentenced the petitioner to a total effective sentence of sixty years imprisonment.[1]

The petitioner, representing himself, filed a petition for a writ of habeas corpus dated January 1, 2001, alleging that his criminal trial counsel, William B. Collins, had rendered ineffective assistance. Eventually, the petitioner was assigned counsel, Frank Cannatelli, who withdrew that first petition with prejudice. That withdrawal prompted a second habeas action, this time alleging, among other things, that Cannatelli was ineffective for withdrawing the original petition. After a trial (first habeas trial), the habeas court, *Schuman*, *J.*, partially granted the second petition and restored the original petition under a new docket number.

In his restored petition, the petitioner, represented by Day, alleged that Collins had rendered ineffective assistance. Specifically, the petitioner alleged that Collins failed to call Fredrica Knight, a potentially exculpatory witness, to testify in the original criminal trial. After a trial (second habeas trial), the habeas court, *Bright*, *J.*, denied the petition in a memorandum of decision, which this court summarily affirmed. See *Francis* v. *Commissioner of Correction*, 150 Conn. App. 906, 98 A.3d 121 (2014).

Thereafter, in a new petition, which was amended on January 4, 2016, the petitioner set forth another claim of ineffective assistance of counsel. Specifically, he alleged that Day had rendered ineffective assistance at the second habeas trial by failing (1) to question Knight properly and (2) to present evidence of Knight's availability to testify at the original criminal trial. That amended petition is the operative petition in this matter. On June 30, 2016, after a trial (third habeas trial), the habeas court, *Sferrazza*, *J.*, issued a memorandum of decision denying the operative petition. The habeas court then granted the petitioner's petition for certification to appeal to this court. This appeal ensued. Additional facts will be set forth as necessary.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . . Therefore, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"It is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings . . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: [A] performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the second prong of *Strickland*, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied. . . . The court, however, may decide against a petitioner on either prong, whichever is easier." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 822–23, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

"The use of a habeas petition to raise an ineffective assistance of habeas counsel claim, commonly referred to as a habeas on a habeas, was approved by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992). In *Lozada*, the court determined that the statutory right to habeas counsel for indigent petitioners provided in General Statutes § 51-296 (a) includes an implied requirement that such counsel be effective, and it held that the appropriate vehicle to challenge the effectiveness of habeas counsel is through a habeas petition. . . . In *Lozada*, the court explained that [t]o succeed in his bid for a writ of habeas corpus, the petitioner must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective. . . . As to each of those inquiries, the petitioner is required to satisfy the familiar two-pronged test set forth in [*Strickland*]. . . . In other words, a petitioner claiming ineffective assistance of habeas counsel on the basis of ineffective assistance of trial counsel must essentially satisfy *Strickland* twice . . . . ." (Citations omitted; internal quotation marks omitted.) *Gerald W.* v. *Commissioner of Correction*,

169 Conn. App. 456, 463–64, 150 A.3d 729 (2016), cert. denied, 324 Conn. 908, 152 A.3d 1246 (2017).

The petitioner's sole claim on appeal is that the habeas court improperly determined that he failed to prove that Day had provided ineffective assistance. We conclude that the habeas court properly denied the amended petition for a writ of habeas corpus.

The petitioner failed to, and cannot, prove that he was prejudiced by Day's alleged ineffectiveness. Knight testified at the second and third habeas trials. Following a review of the evidence presented at the third habeas trial as well as the transcripts of both the second habeas trial and the criminal trial, the third habeas court noted: "Knight was very sketchy as to the sequence of events she purportedly perceived. She first testified that, after school on December 20, 1993, she and two friends walked to a corner store located about one block from her residence. The victim . . . was her mother's boy-friend. She saw him on or at a porch attached to a house . . . . She saw a 'spark' of light between the victim and a person other than the petitioner. She heard *no* gunshot accompanying the glint of light. Sometime later, she observed the victim lying on the ground, went near his body, and spoke to a young man whom she believes was the petitioner. The man told her to leave the area. Subsequently, Knight modified her recollec-tion so that she stated that she noticed the activity recounted above on her way *back* from the corner store. Knight reiterated that she never saw the actual shooting, but she knew the petitioner was not the shooter.

"The other evidence adduced at the criminal trial both refutes and explains some of Knight's inconsistent observations. . . . [Wilcox, Rosemond, Shirley] and the petitioner regularly sold crack cocaine [at Wilcox' residence]. . . . During the early evening of December 20, 1993, the petitioner approached the porch . . . upon which Wilcox, Rosemond, and Shirley loitered. The petitioner asked for a light in order to smoke a marijuana cigar. Rosemond obliged.

"A little later, the victim also approached the group and complained to the petitioner about whether a drug transaction between them was satisfactorily fulfilled. Following some argument, the petitioner crossed the street to enter a driveway or alleyway . . . . The victim followed the petitioner but stopped on the sidewalk at the beginning of the driveway. The petitioner proceeded down the driveway toward the rear of the buildings.

"The petitioner emerged from the alley carrying a pistol. The victim tussled with the petitioner, followed by an audible gunshot. The victim staggered backward a few steps and then collapsed. Wilcox, Rosemond, and Shirley ran across the street to where the victim lay. The petitioner ran away, and no one encountered him again that night. A girl also came over to the victim,

and *Wilcox* told her to call an ambulance.

"After full review of the evidence, the court finds it highly unlikely that a jury would find Knight's putative testimony very persuasive. This witness repeatedly stated that she never *saw* or *heard* anyone shoot the victim. Instead, she recalled a spark of light without audible accompaniment. Knight may very well have seen the assisted lighting of the petitioner's marijuana cigar. It should be noted that evidence of the use of the cigarette lighter shortly before the argument between the petitioner and the victim was introduced at the criminal trial at which Knight never testified. Thus, that testimony was *not* an attempt to explain away Knight's perception of a flash of light among the group of young men.

"Also, other witnesses in the neighborhood heard the gunshot, which must have been quite audible. Yet, Knight observes only a quick 'spark' of light uncoupled from the sound of gunfire.

"At the criminal trial, *Wilcox* described a young female approach the victim while he stood nearby the body. Wilcox mentioned that *he* engaged the girl in a brief conversation. His testimony came sixteen years before Knight testified at the [second habeas trial]. It appears likely that a fact finder would find Knight's identification of the person to whom she spoke sincere but mistaken. In sum, the addition of her testimony fails to undermine the court's confidence in the petitioner's convictions." (Emphasis in original.)

It is clear that the habeas court in the third habeas trial carefully weighed Knight's putative testimony against the rest of the evidence adduced at the original criminal trial and found it not to be credible. "[A] pure credibility determination . . . is unassailable." *Breton* v. *Commissioner of Correction*, 325 Conn. 640, 694, 159 A.3d 1112 (2017); see also *Sanchez* v. *Commissioner of Correction*, 314 Conn. 585, 604, 103 A.3d 954 (2014) ("we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude" [internal quotation marks omitted]); *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 448, 936 A.2d 611 (2007) ("[t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony" [internal quotation marks omitted]).

The habeas court's findings are supported by the evidence. Not only are the other witnesses' testimonies consistent with one another, but they are bolstered by statements given in the immediate aftermath of the crime. Knight's testimony, on the other hand, is consistent neither with her early statements nor with any of the other witnesses' recollections. Additionally, other evidence was presented at the criminal trial to suggest

the petitioner's guilt, most salient of which was his flight to New York under an alias, which is strong circumstantial evidence of consciousness of guilt. Thus, the court's findings were not clearly erroneous.

On this record, therefore, the habeas court properly determined that, in light of all the other evidence, Knight's testimony would not have led a reasonable jury to find the petitioner not guilty. As a result, the petitioner cannot prove that he was prejudiced by Day's purportedly deficient performance at the second habeas trial in questioning Knight improperly or in failing to present evidence of her availability to testify at the original criminal trial, or both.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On the petitioner's direct appeal, our Supreme Court reversed his conviction of altering or removing an identification mark on a pistol, but affirmed his conviction of the remaining offenses. *State* v. *Francis*, supra, 246 Conn. 352–56, 359.