STATE OF CONNECTICUT *v.* CECIL LIPSCOMB
(AC 19353)

Lavery, Hennessy and Daly, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued February 18—officially released June 13, 2000

*Jon L. Schoenhorn*, with whom, on the brief, was *Jeanne M. Zulick*, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Adam Scott*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Cecil Lipscomb, appeals from the judgment of conviction of operating a motor vehicle while his license was under suspension, claiming that the trial court improperly denied his motion to suppress evidence. Specifically, the defendant claims that he was seized by East Hartford police officers without any reasonable or articulable suspicion of criminal activity and that the subsequent discovery that he was operating a motor vehicle while his license was under suspension should be suppressed as the fruit

of an unreasonable search and seizure. We agree and reverse the judgment of the trial court.

The following facts are relevant to the resolution of this appeal. Shortly before midnight on March 17, 1998, East Hartford police officers Mark Allen and William Spragg were in a marked police vehicle in the Main Street area of East Hartford. Spragg was driving at that time, while Allen was riding as a front seat passenger. Allen observed a Ford Bronco turn from Main Street onto Connecticut Boulevard. He then saw a woman, Stephanie Beaulieu, standing on the corner waving her arm to the Bronco. After Allen observed this action, he told Spragg that Beaulieu was a prostitute. The officers then observed Beaulieu get into the Bronco, which pulled over to pick her up and subsequently drove away. The officers testified that this particular area in East Hartford is a high density, "high crime" area known for car thefts, prostitution, burglaries and robberies.

Allen also testified that he had observed Beaulieu in the past on two different occasions. Once, he saw her in the Main Street area during a motor vehicle stop in which she was the passenger in a car driven by a man. No criminal activity was seen at that time. The second occasion that Allen saw Beaulieu occurred when he was riding in a police vehicle with Officer Tracy O'Connell of the East Hartford police, who pointed Beaulieu out and said that she was a prostitute. Allen testified that it was his belief that O'Connell previously had arrested Beaulieu for prostitution. It was later determined that Beaulieu had no prior arrests or convictions for prosti-lution.

Spragg then proceeded to follow the Bronco onto Lynn Street, a dead-end street, where the officers motioned to the operator of the Bronco to stop.[2] There

___

[2] According to Spragg, the Bronco had turned around in the dead-end street and was moving toward the officers when Spragg motioned the vehicle to stop. According to the state, however, the Bronco was parked at the

were no motor vehicle violations observed at any time before the Bronco was stopped. Allen confronted the operator of the Bronco, the defendant, and asked for his license and registration. After a check, Allen found that the defendant's motor vehicle license was suspended and charged him with a violation of General Statutes § 14-215 (c).

The defendant filed a motion to suppress the evidence of license suspension claiming that he was stopped by the police without a reasonable and articulable suspicion of criminal activity in violation of the federal and state constitutions. The court denied the motion, and the defendant subsequently pleaded nolo contendere with the right to appeal the denial of the motion to suppress pursuant to General Statutes § 54-94a.[3]

The defendant claims on appeal that the police lacked a reasonable and articulable basis to stop his vehicle, and that the ensuing detention violated his rights pursuant to the fourth and fourteenth amendments to the United States constitution,[4] and article first, § 7, of the constitution of Connecticut.[5] The state argues in

time the police approached. This fact is in direct contradiction to Spragg's testimony, and most important, to the trial court's finding of facts.

[3] General Statutes § 54-94a provides in relevant part: "When a defendant . . . enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure . . . the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . ."

[4] The fourth amendment to the United States constitution provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The fourth amendment to the United States constitution is made applicable to the states by the fourteenth amendment. *Mapp* v. *Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

[5] Article first, § 7, of the constitution of Connecticut provides in relevant part: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures . . . ."

response that the investigatory stop of the defendant was justified on the basis of the facts that Allen thought Beaulieu was a prostitute, Beaulieu was engaged in conduct typical of a prostitute and the area was known for prostitution. We agree with the defendant that the facts of this case do not reveal a reasonable and articulable basis for a police stop.

"The determination of whether a reasonable and articulable suspicion exists involves a two-part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct. See *State* v. *Cofield*, 220 Conn. 38, 44, 595 A.2d 1349 (1991). The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. . . . Id.; see *State* v. *Lasher*, 190 Conn. 259, 267, 460 A.2d 970 (1983). . . . *State* v. *Kyles*, [221 Conn. 643, 660–61, 607 A.2d 355 (1992)]." (Internal quotation marks omitted.) *State* v. *Wilkins*, 240 Conn. 489, 496, 692 A.2d 1233 (1997).

"Article first, §§ 7 and 9 of our state constitution permit a police officer in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes even though there is no probable cause to make an arrest. *State* v. *Mitchell*, [204 Conn. 187, 195, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987)]; *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990). In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. *State* v. *Scully*, 195 Conn. 668, 674, 490 A.2d 984 (1985), quoting *United States* v. *Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). A court reviewing the legality of a stop must therefore examine the specific information available to

the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. See *State* v. *Braxton*, 196 Conn. 685, 689, 495 A.2d 273 (1985). These standards, which mirror those set forth by the United States Supreme Court in *Terry* v. *Ohio*, [392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)], with regard to fourth amendment analysis, govern the legality of investigatory detentions under article first, §§ 7 and 9 of our state constitution. *State* v. *Lamme*, supra [184]; *State* v. *Scully*, supra, 674–75 n.12." (Internal quotation marks omitted.) *State* v. *Oquendo*, 223 Conn. 635, 654, 613 A.2d 1300 (1992).[6]

"Police have the right to stop for investigation short of arrest where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot. . . . [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Citations omitted; internal quotation marks omitted.) *State* v. *Watson*, 165 Conn. 577, 584–85, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974). "[A] police officer's decision to detain an individual for investigatory purposes must be predicated on more than a mere hunch. *State* v. *Scully*, supra, [195 Conn.] 675; *State* v. *Aversa*, 197 Conn. 685, 691, 501 A.2d 370 (1985)." (Internal quotation marks omitted.) *State* v. *Oquendo*, supra, 223 Conn. 656. " 'An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about

---

[6] Because we conclude that the defendant's detention was in violation of article first, § 7, of the constitution of Connecticut, we need not address the defendant's contention that his rights pursuant to the United States constitution were violated. See *State* v. *Donahue*, 251 Conn. 636, 644 n.10, 742 A.2d 775 (1999).

to be, engaged in criminal activity.' " *State* v. *Scully,* supra, 674.[7]

We conclude that a woman waving a car down and subsequently getting into it in an area known for prostitution does not form the proper basis for rational inferences that warrant a police officer's intrusion. The state argues that there was a reasonable and articulable suspicion to detain the defendant because the officers (1) were aware of the area's reputation for prostitution, (2) had information that the woman was a prostitute and (3) saw the woman engage in conduct that is consistent with the modus operandi of prostitutes.[8]

Our Supreme Court has recently held in *State* v. *Donahue,* 251 Conn. 636, 646–47, 742 A.2d 775 (1999) (en banc), that police officers are not justified in stopping people because they are in a high crime area. See also *State* v. *Oquendo,* supra, 223 Conn. 655 n.11 (history of criminal activity in locality does not justify suspension of constitutional rights of everyone in locality). The state claims, however, that the officers' suspicion in the present case was fueled by additional factors besides the fact that the actions took place in an area known for prostitution.

For instance, the state claims that the officers had information that Beaulieu was a prostitute. The trial court also found that Allen had knowledge that Beaulieu was a prostitute. A review of the record reveals that Allen testified that O'Connell told him on some prior occasion that Beaulieu was arrested for prostitution. A subsequent police record search revealed, however,

---

[7] The state does not contest in the present case that there was a seizure of the defendant by the police officers.

[8] The state also contends that the finding of reasonable and articulable suspicion is supported by the fact that the woman and the defendant were found by the officers parked on a dead-end street. The court's memorandum of decision and the record do not support the fact that the vehicle was parked. See footnote 2.

that Beaulieu was never convicted of or arrested for prostitution. Allen also testified that he had seen Beaulieu on a prior occasion on a motor vehicle stop where she was a passenger in a car driven by another gentleman. No arrests were made at that time. Any inference that Beaulieu was a prostitute based on these two factors is tenuous at best. Allen did not have personal knowledge that Beaulieu was a prostitute. His knowledge was given to him by O'Connell. O'Connell was never asked to testify as to the basis he had for informing Allen that Beaulieu was a prostitute. We are unable to discern whether the information is rumor or has some objective basis in fact. In addition, finding Beaulieu in a car with a man does not lead to the inference that she was a prostitute.

Indeed, even if we assume arguendo that Beaulieu was a prostitute, her actions of waving to the defendant and getting into his car do not amount to "furtive conduct" that should warrant intrusion by the police. Compare *State* v. *Januszewski*, 182 Conn. 142, 149–50, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981) (two people in car in commuter parking lot engaged in furtive conduct supported reasonable and articulable suspicion of criminal activity). Such action does not qualify as an objective manifestation of imposing criminal activity to warrant a detention by the police.

Looking at the totality of the circumstances, we are unpersuaded that the informational basis given by the state to justify the defendant's detention is sufficient to support a reasonable and articulable suspicion. "In a close case . . . the balance ought to be struck on the side of the freedom of the citizen from governmental intrusion. To conclude otherwise would be to elevate society's interest in apprehending offenders above the right of citizens to be free from unreasonable stops." *State* v. *Oquendo*, supra, 223 Conn. 657. Because there

is insufficient evidence to yield specific and articulable facts to make the defendant's detention constitutional, we conclude that the trial court improperly denied the defendant's motion to suppress.

The judgment is reversed and the case is remanded with direction to grant the defendant's motion to suppress and for further proceedings in accordance with law.

In this opinion the other judges concurred.