STATE OF CONNECTICUT *v.* JOSHUA E. TURNER
(AC 18934)

Landau, Spear and Daly, Js.

Argued October 26, 2000—officially released March 20, 2001

*Sheila A. Huddleston*, special public defender, with whom were *Amy R. Kirschbaum*, special public defender, and, on the brief, *James W. Bergenn*, special public defender, for the appellant (defendant).

*Robert M. Spector*, deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Nicholas Joseph Bove, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Joshua E. Turner, appeals from the judgment of conviction, rendered after a jury trial, of carrying a pistol without a permit in violation of General Statutes (Rev. to 1997) § 29-35 (a),[1] having a weapon in a motor vehicle in violation of General Statutes (Rev. to 1997) § 29-38,[2] altering or removing identification marks from a pistol in violation of General Statutes (Rev. to 1997) § 29-36[3] and interfering with an

---

[1] General Statutes (Rev. to 1997) § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

[2] General Statutes (Rev. to 1997) § 29-38 provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued . . . or has not registered such weapon as required . . . shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. . . ."

[3] General Statutes (Rev. to 1997) § 29-36 provides: "No person shall alter, remove or obliterate the name of any maker or model or any maker's number or other mark of identification on any pistol or revolver. The possession of any pistol or revolver upon which any identifying mark, number or name has been altered, removed or obliterated shall be prima facie evidence that the person owning or in possession of such pistol or revolver has altered, removed or obliterated the same."

officer in violation of General Statutes § 53a-167a (a).[4]

The defendant claims that the court improperly (1) excluded evidence at trial that corroborated his testimony and impeached critical testimony by the state's key witness, (2) instructed the jury regarding the presumption set forth in § 29-36, thus depriving him of his due process rights, (3) accepted the jury's finding that there was sufficient evidence to support an inference that he altered the identification mark of a gun allegedly in his possession and (4) denied his motion to suppress unlawfully seized evidence. We reverse the judgment of the trial court and order a new trial because we agree with certain of the defendant's evidentiary claims and his claim as to the improper jury instruction. We also will review the remaining claims because they are likely to arise in the new trial.

The following facts were found by the trial court after a hearing on the defendant's motion to suppress and include facts that the jury reasonably could have found. In the early morning of June 17, 1997, Officer Paul Nikola and Lieutenant Adam Radzimirski of the Bridgeport police department were conducting surveillance of a known drug house at 1406 Stratford Avenue in Bridgeport. Nikola previously had made numerous drug related arrests and seizures in the neighborhood. Using "night vision" binoculars to enhance his view, Nikola hid behind a dumpster in the rear yard of the house while Radzimirski waited in a marked police cruiser two blocks away.

Radzimirski had obtained information that narcotics were being sold from a window facing an alleyway on the west side of the house. That night, Nikola observed several individuals walk through the alleyway,

---

[4] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

approach the window, knock on the window and say a number. Each time, he saw a hand come out of the window and exchange something for paper money, and, each time, the person in the alleyway appeared to hide something before walking away.

At approximately 3 a.m., the defendant drove to the alleyway entrance, got out of his car, walked through the alleyway, knocked on the window and stated, "It's me." The defendant took nothing from the window, and no hand came out of the window. The defendant then proceeded to the rear of the house and, using his own set of keys to unlock the back door, went inside. Thirty-five to forty-five seconds later, he emerged from the house carrying a plastic bag. After locking the door, the defendant returned to the alleyway entrance, looked up and down Stratford Avenue, and placed the bag underneath his coat. He then stepped into the street, entered his vehicle and began to back down Stratford Avenue in the wrong direction.

Nikola radioed his observations to Radzimirski, but by the time Radzimirski reached Stratford Avenue, the defendant's car was in motion. Radzimirski followed the defendant and, believing his actions to be suspect, attempted to stop him by activating his overhead lights. When the defendant refused to pull over and accelerated instead, Radzimirski pursued him onto Interstate 95 heading north.

Radzimirski radioed the direction of his pursuit to Officer John Meyer, who was patrolling the area, and Meyer took up a position at the exit thirty ramp. When the defendant got off the highway at exit thirty, Meyer activated his siren and flashing lights, and became the primary pursuit vehicle, with Radzimirski following close behind. The vehicle chase ended when the defendant's car failed to negotiate a left turn onto Main Street

in Stratford and came to a halt on the front lawn of a business establishment.

At that point, the defendant got out of his car and started running along Main Street. Meyer drove across Main Street in front of the defendant to make him slow down. The defendant attempted to jump over the hood of Meyer's cruiser, which had come to a stop, but made contact with the hood during the jump. Meyer saw two items fall to the ground. Meyer then chased the defendant by foot for approximately 100 yards, tackled him and brought him to the ground just after Radzimirski arrived and positioned his vehicle to block the defendant's flight. Thereafter, the officers handcuffed and arrested the defendant.

Meyer went back to secure the area where the vehicle chase had ended. He looked for the fallen items and found a shoe and a large, clear, plastic zip-lock bag, which had dropped onto the ground near the front of his cruiser. Inside the bag was a pistol wrapped in newspaper and a clip containing live rounds of ammunition. Meyer observed that the gun's serial number had been drilled or scratched out so that it was unreadable.

We now turn to the defendant's version of events to establish the context for his evidentiary claims. The defendant testified that he had just finished working as a disc jockey at one party and was heading to a job at another party in a building adjacent to the alleyway. Since he knew that the building had no working toilet, he went into the alleyway to urinate. When he emerged from the alleyway, he noticed a police car approaching. The police car came directly toward him and drove onto the sidewalk to "fence him in." In doing so, one of the tires ran over his right foot and broke three bones. Radzimirski then got out of the police car and asked the defendant where the drugs were. When the defendant said that he did not have any drugs, Radzimir-

ski patted him down, found nothing and told him to leave.

The defendant drove away and soon became aware that he was being followed by another vehicle, but did not realize initially that the vehicle was a police car. Two blocks later, when the vehicle activated its flashing lights, the defendant became frightened because he had just been injured by a police officer. He therefore increased his speed and headed for Interstate 95. Radzimirski continued to pursue him, and when the defendant exited Interstate 95, Meyer joined in the chase.

The defendant testified that although he did not stop immediately after exiting the highway, he stopped voluntarily for a traffic light at the intersection of Main Street and Access Road. There, Meyer approached the defendant's car and ordered him to put his hands on the steering wheel. After the defendant complied, Meyer told him to put his hands out the window. Meyer then pulled him from the car and hit him in the face with a nightstick, causing a laceration. At trial, the defendant testified that the police planted a gun on him after they stopped him. He denied that he was carrying a package containing a gun when the police ran over his foot, pursued him in a police car and arrested him. He also denied that he had been involved in a foot chase. He admitted, however, that he did not have a pistol permit.

It is undisputed that the officers transported the defendant to Bridgeport Hospital after his arrest. Physicians in the emergency room treated him for three broken bones in his foot and a laceration on his face, which required several stitches.

The state charged the defendant with carrying a pistol without a permit, having a weapon in a motor vehicle, altering or removing the identification marks from a pistol and interfering with an officer. The court denied the defendant's motion to suppress the items seized by

the police during his arrest, and a jury convicted him on all four counts. This appeal followed.

I

The defendant first claims that he was deprived of his constitutional rights to confrontation and to present a defense as guaranteed by the sixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut because the court improperly excluded evidence at trial that corroborated the defendant's testimony and impeached critical testimony by the state's key witnesses. Specifically, the defendant claims that the court improperly precluded him from (1) testifying as to his postarrest hospitalization, (2) eliciting testimony from Radzimirski and Meyer regarding his foot injuries and hospitalization, (3) introducing hospital records documenting his foot injuries and (4) eliciting detailed testimony from Radzimirski or Meyer regarding fingerprints. We conclude that, except as to the fingerprint testimony, the court abused its discretion in ruling to preclude the evidence and that preclusion of the evidence was prejudicial to the defendant. It therefore is unnecessary for us to reach the defendant's related constitutional claims. See State v. Valentine, 240 Conn. 395, 399, 692 A.2d 727 (1997).

"It is well settled that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . [Its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make *every reasonable presumption* in favor of upholding the trial court's ruling, and only upset it for a *manifest abuse of discretion*. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was . . . a showing by the defendant of substantial prejudice or injustice." (Citations omitted;

emphasis in original; internal quotation marks omitted.) *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 546–47, 733 A.2d 197 (1999).

A

The defendant claims that the court improperly excluded his testimony, testimony from the two arresting officers, and records from the hospital regarding his foot injuries and postarrest hospitalization. He argues that the excluded testimony and records were relevant to whether the foot chase occurred, to when the police apprehended him and to the charge of interfering with an officer. The defendant further argues that the excluded testimony and hospital records relate to the larger question of the officers' credibility in the eyes of the jury and, consequently, which party's version of the incident the jury should believe. The defendant, therefore, argues that the foot chase, by implication, is relevant to the gun charges as well as to the interference charge. We agree.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence *tend* to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . *State* v. *Coleman*, 241 Conn. 784, 788–89, 699 A.2d 91 (1997)." (Emphasis in original; internal quotation

marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 257, 745 A.2d 800 (2000).

The following additional facts are necessary to our resolution of the defendant's claim. At trial, defense counsel attempted to cross-examine Radzimirski and Meyer about the defendant's foot injuries, facial lacerations and the events following his arrest. The court sustained the state's objections, however, on the ground that such testimony was irrelevant, immaterial or beyond the scope of direct examination. Defense counsel then called Radzimirski and Meyer as witnesses for the defense to testify about their knowledge of the defendant's injuries, pain and postarrest hospitalization. Following counsel's offer of proof, the court again sustained the state's objections on the grounds of relevancy and materiality. The defendant also attempted to testify in his defense as to the postarrest hospitalization, but the court sustained the state's objections even after the state had cross-examined the defendant as to whether he took himself to the hospital immediately following his arrest. On redirect, the defendant managed to state that Meyer had taken him to the hospital only because the court failed to rule on the state's objection to that testimony. In addition, the court refused to admit into evidence the defendant's June 17, 1997 hospital records on the ground that they were not relevant. The records contained notes indicating that the defendant suffered three broken bones in his right foot on the night of his arrest and that the injury occurred when a "car wheel" ran over his foot. Finally, the court did not allow the defendant to cross-examine Radzimirski during the state's rebuttal case regarding the standard procedure to be followed in dealing with injuries the defendant might have suffered that night.

On the basis of our review of the record, we conclude that the officers' testimony concerning the defendant's foot injuries and hospital treatment on the night of the

incident might have led the jury to doubt the defendant's ability to flee from Meyer by running for 100 yards prior to being tackled and subdued, thus casting doubt on other aspects of the officers' story. Although it is true that the defendant himself offered testimony on those matters, absent the excluded evidence there was no other evidence to support his version of events that night. The prosecutor exploited that lack of corroborating testimony in his closing argument to the jury when he repeatedly portrayed the defendant as a "liar" and his story as a complete "fabrication." Where a court erroneously excludes relevant evidence, the state compounds the harm to the defendant when it asks the jury to reject the defendant's claim based on the lack of such evidence. *State* v. *Carter*, 228 Conn. 412, 428–29, 636 A.2d 821 (1994).

Relying in part on *State* v. *Cepeda*, 51 Conn. App. 409, 723 A.2d 331, cert. denied, 248 Conn. 912, 732 A.2d 180 (1999), the state argues that the court properly excluded testimony and records regarding the defendant's injuries because the injuries and their subsequent treatment were not relevant to the underlying charges. The state asserts that the hospital records constituted, at best, extrinsic evidence offered to impeach the officers' testimony on a collateral issue. The state contends that the relevant issues were whether the defendant possessed a gun, whether he altered the serial number on the gun and whether he interfered with the police by engaging them in a high speed vehicle chase. According to the state, the foot chase was not relevant to the interference charge because the defendant's criminal conduct was complete before the foot chase occurred.

Elsewhere in its brief, however, the state identifies one of the six "important, relevant issues" in the case as "whether the defendant ever engaged the officers in a foot chase." Moreover, both the prosecution's request

to charge the jury and the subsequent jury instructions specifically referred to the foot chase, not the vehicle chase, as evidentiary support for the charge of interfering with an officer.

In *Cepeda*, the court excluded as irrelevant the testimony of a witness that the victim's brother had stabbed the defendant's brother during a melee involving at least six men. The court explained that such testimony did not implicate the defendant or the victim and was not connected to the "crucial issue" of whether the defendant shot the victim. Id., 418. Here, by contrast, the defendant alleges that his foot injuries prevented him from engaging in the foot chase altogether. The foot chase is a material element of the interference charge, not only because the prosecution expressly conceded that it was in its proposed jury instructions, but also because the alleged foot chase satisfies the elements of resisting and endangering an officer. See General Statutes § 53a-167a.

Moreover, if the jury were to conclude that the foot chase did not occur, the gun charges could not be supported because the officers claimed that the bag containing the gun was dropped during the foot chase and its contents were revealed only after it was recovered and opened by the officers. Furthermore, the state concedes in its brief that the unwrapping of the plastic bag to expose the gun and its altered identification marks after the gun was dropped is relevant to the underlying charges. "All that is required is that the evidence *tend* to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative;" (Emphasis in original; internal quotation marks omitted.) *State* v. *DeCaro*, supra, 252 Conn. 257. Here, evidence regarding the defendant's injuries and hospitalization arguably tends to support his assertion that Radzimirski's vehicle ran over his foot and that he

could not have engaged in the foot chase. Such evidence is relevant to each of the charges against the defendant.

The state also claims that admission of the hospital records and additional testimony by the officers regarding the defendant's foot injuries was unnecessary because the defendant himself testified as to his injuries and because the injuries are consistent with both parties' versions of the incident.[5] Those claims are disingenuous.

During its closing argument to the jury, the state repeatedly called the defendant a liar and told the jury that his testimony had been truthful only with respect to his birth date and his admission that he did not have a gun permit. Additional testimony and evidence regarding the defendant's injuries might have assisted the jury in assessing the credibility of the officers and the defendant, and prevented the state from urging the jury to regard the defendant's story as a complete fabrication.

The state's argument that the foot injuries are irrelevant because they are consistent with both versions of the incident also has no merit because it is the relevance of the injuries that is significant, not the fact that the injuries may have been consistent with both stories. Moreover, the state cites no authority for the proposition that evidence consistent with two conflicting versions of the facts is necessarily irrelevant.

The state finally argues that any error that might have occurred was harmless because the excluded testimony was cumulative, had minimal probative value and there was overwhelming evidence of the defendant's guilt. We do not agree.

---

[5] The state claims that the defendant could have sustained the injuries when he crashed into the police cruiser during the foot chase and was tackled face down on the pavement.

The effect of excluding evidence bearing on the ability of the defendant to participate in the foot chase, a material element in the charge of interference but also relevant to the gun charges, was potentially significant. Although the defendant testified as to his foot injuries and hospitalization, the state in its closing argument to the jury asserted that the defendant was a liar and that his story was a complete fabrication. Absent additional testimony corroborating the defendant's version of the incident, the state's closing argument made the disputed testimony and hospital records absolutely essential to the defendant's case. Accordingly, we do not consider such evidence cumulative or insignificant. Finally, evidence of the defendant's guilt was not overwhelming because the state's case rested solely on the officers' testimony.

On the basis of our review of the record, and making every reasonable presumption in favor of upholding the court's evidentiary rulings, we conclude that the court, by precluding records and testimony regarding the defendant's injuries and postarrest hospitalization, manifestly abused its discretion and improperly prevented inquiry into a legitimate area of relevant concern. The defendant's alleged 100 yard dash constituted a material element of the charge of interfering with an officer. In addition, the state based all three gun charges on the allegation that the defendant dropped a package containing the gun as he leaped over a police car and sprinted away. Accordingly, an assessment of the defendant's physical ability to sprint for 100 yards was relevant to all four charges against him.

Because the court's evidentiary rulings were harmful to the defendant on each count of his conviction, he is entitled to a new trial on all four counts.

B

The defendant also claims that the court improperly excluded testimony regarding the state's failure to pro-

duce fingerprint evidence. He argues that three of the four charges against him required the state to prove that he had possessed the gun and that, if the police had performed fingerprint testing on the gun but failed to produce the fingerprint evidence, the defendant could have obtained a negative inference instruction. Such an instruction would have allowed the jury to infer that the state did not introduce the fingerprint evidence because the evidence would not have supported the state's contention that the defendant possessed the gun. He, therefore, asserts that he was precluded from establishing the necessary factual predicate for requesting the instruction. This claim has no merit.

The following additional facts are necessary to our resolution of the defendant's claim. The state presented no evidence that the defendant's fingerprints were found on the gun or the plastic bag. At trial, the defendant elicited testimony from Meyer on cross-examination that he had not done fingerprint testing on the gun. When the defendant asked Meyer if anyone else had done fingerprint testing on the gun, the state objected. The court sustained the objection as irrelevant and beyond the scope of Meyer's direct testimony. When the defendant called Meyer as a witness in his own case and attempted to elicit similar testimony, the court again sustained the state's objection.

The court also precluded the defense from asking Radzimirski if he personally had tested the weapon for fingerprints. Thereafter, defense counsel made an offer of proof in which he informed the court that because the defendant would testify that he had not possessed the gun, additional testimony relating to fingerprint analysis on the gun was relevant. Defense counsel further indicated that he would request a negative inference instruction on the failure of the police to subject the gun to fingerprint analysis.

We conclude, after a careful review of the record, that the court did not abuse its discretion by ruling to exclude additional testimony by the officers regarding fingerprint testing. Such testimony was not relevant because evidence of fingerprints was not required to support any of the three gun possession charges. Possession is established by showing dominion and control over the object possessed. *State* v. *Longo,* 243 Conn. 732, 742, 708 A.2d 1354 (1998). Here, as the defendant conceded during oral argument before this court, the state based its case exclusively on evidence of dominion and control, namely, that the officers observed the defendant carry a gun away from 1406 Stratford Avenue, place it inside his coat, get into his car and discard it during a foot chase. Moreover, there would be no reason to expect the defendant's fingerprints to be on the gun because, during the entire time that the officers allegedly observed him in possession of the gun, it was wrapped in newspaper and plastic.

The defendant nonetheless argues that fingerprint evidence was particularly relevant to the charge of altering an identification mark and that, absent evidence that the defendant touched the gun, a properly instructed jury should have concluded that the state failed to prove the alteration charge. We disagree.

Pursuant to § 29-36, "[t]he possession of any pistol or revolver upon which any identifying mark, number or name has been altered, removed or obliterated shall be prima facie evidence that the person owning or in possession of such pistol or revolver has altered, removed or obliterated the same." "In criminal law, the word possession generally denotes an intentional control of a designated thing accompanied by knowledge of its character." (Internal quotation marks omitted.) *State* v. *Hobson,* 8 Conn. App. 13, 24, 511 A.2d 348, cert. denied, 201 Conn. 808, 515 A.2d 379 (1986), cert. denied, 480 U.S. 917, 107 S. Ct. 1370, 94 L. Ed. 2d 686

(1987). Accordingly, once the jury determined that the defendant possessed the gun, it did not need fingerprint evidence to conclude that the defendant altered the identification mark, and additional testimony as to fingerprints would have been irrelevant.

II

The defendant next claims that the court improperly instructed the jury regarding the presumption contained in § 29-36 that his possession of the gun was prima facie evidence that he altered its identification marks. The defendant argues that because the court's instructions contained the phrase "prima facie proof" instead of "prima facie evidence" in referring to the statutory requirement, the instructions created an unconstitutional mandatory presumption that deprived him of his right to due process. Having failed to object to the instructions at trial, he now seeks review under *State v. Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

Under *Golding,* "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." *State v. Newton,* 8 Conn. App. 528, 531, 513 A.2d 1261 (1986). In this case, the record is adequate for review, and the defendant's claim is of constitutional magnitude. Even more significantly,

the state concedes that the court improperly instructed the jury.

In its charge to the jury, the court quoted § 29-36 in its entirety; see footnote 3; and stated: "Possession means intentional dominion and control over an object. In this case, a firearm with scratched off identification numbers. Keep in mind that the mere presence in the vicinity of a firearm, however, is not enough to establish possession. However, in this situation, the state has argued that the defendant, by carrying the package and in his course of conduct while carrying it, that is, the pursuit from the police, clearly demonstrate[d] that he was in possession of the firearm and that his possession of it is *prima facie proof* that he had altered, obliterated the identification marks or had knowledge of the marks being removed. On the other hand, the defendant argues that since he never picked up the package, he never had possession of the pistol.

"Now, if you find that the state has proven these elements beyond a reasonable doubt, then you should find the defendant guilty. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt any one of the elements, you should find the defendant not guilty." (Emphasis added.)

The state concedes that the instruction misled the jury because the court interpreted the inference in § 29-36 to be mandatory. Under the principles articulated in *State* v. *Francis*, 246 Conn. 339, 717 A.2d 696 (1998),[6]

---

[6] In *Francis,* our Supreme Court reiterated that "[t]he Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. . . . This bedrock, axiomatic and elementary [constitutional] principle . . . prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. . . .

"A mandatory presumption instructs the jury that it *must* infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury that a possible conclusion *may* be drawn if the State

the instruction thus constitutes reversible error, and the defendant is entitled to a new trial on this claim. Accordingly, we conclude that the defendant is entitled to a new trial on this claim with instructions that the statutory inference is permissive and not mandatory.

## III

The defendant next claims that the presumption contained in § 29-36, upon which the court instructed the jury, is unconstitutional as applied to the facts of this case.[7] He argues that the presumption is tenuous

proves predicate facts, but does not require the jury to draw that conclusion.

"Mandatory presumptions . . . violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense. . . . A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved. . . . State v. Gerardi, [237 Conn. 348, 356–57, 677 A.2d 937 (1996)]. This court previously has stated that presumptions will be construed as permissive inferences in order to preserve them in a constitutional manner." (Internal quotation marks omitted.) State v. Francis, supra, 246 Conn. 354.

[7] In the defendant's brief, the table of contents identifies the claim as one of sufficiency of the evidence. In the statement of issues and the text, however, the defendant claims that the presumption in § 29-36 is unconstitutional as applied to the facts of this case. Were we to consider the claim as one of sufficiency of the evidence, we would follow the reasoning in State v. Francis, supra, 246 Conn. 352–56, in which our Supreme Court was asked to consider a sufficiency of the evidence claim in conjunction with a claim that the jury had reached its verdict on the basis of an improper instruction concerning the parties' respective burdens of proof pursuant to § 29-36. In Francis, the court concluded that "[i]n light of our interpretation of the presumption in § 29-36 as permissive and not mandatory, we conclude that the jury reached its verdict based on an improper instruction concerning the force and weight of this presumption. Consequently, although the standard governing our review of sufficiency of the evidence is to evaluate the evidence construing it in the light most favorable to sustaining the facts expressly and impliedly found by the jury . . . we cannot presume the sufficiency of the evidence on which the jury based its verdict in light of the improper instruction. . . . We cannot presume that the jury would have reached the same conclusion had it been properly instructed on the law. Accordingly, we need not reach the defendant's sufficiency claim." (Citation omitted; internal quotation marks omitted.) Id., 355 n.17. For the reasons stated in Francis, we similarly decline to review the defendant's claim as one of sufficiency of the evidence.

because he was not yet twenty-one years old at the time of his arrest and could not have been the original owner of the forty-six year old handgun. He also argues that the police did not claim to have seen him carrying the package with the gun into the building at 1406 Stratford Avenue and that the state presented no evidence that he had ever seen or held the gun at any other time. The defendant, therefore, argues that the statutory inference of alteration was based solely on the predicate fact of possession, and that only if other facts and circumstances support the fact of possession is it permissible to instruct a jury that it may draw such an inference. Although the defendant did not raise that issue at trial, he now seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40.

We conclude, pursuant to *Golding*, that the record is adequate for review and the defendant's claim is of constitutional magnitude. The defendant has failed, however, to demonstrate a clear constitutional violation that clearly deprived him of a fair trial and, thus, has failed to satisfy the third prong of *Golding*.

"[A] criminal statutory presumption must be regarded as irrational or arbitrary, and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." (Internal quotation marks omitted.) *State* v. *Strickland*, 42 Conn. App. 768, 775, 682 A.2d 521 (1996), rev'd on other grounds, 243 Conn. 339, 703 A.2d 109 (1997). "When reviewing the constitutionality of a permissive inference, we consider whether under the facts of the case, there is no rational way the trier could make the connection permitted by the inference . . . [f]or only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination." (Internal

quotation marks omitted.) *State* v. *Francis*, supra, 246 Conn. 356.

Here, a jury relying on the state's version of the facts reasonably could have inferred that the defendant both possessed and altered the gun. Although the defendant could not have been the original owner of the gun, he apparently was familiar with the occupants and contents of the house at 1406 Stratford Avenue because he identified himself to the person at the window by announcing, "It's me," and had his own key to unlock the back door. The fact that he remained in the house for little more than thirty seconds before coming out with the bag in his hand also suggests that he entered the house for the express purpose of picking up the bag and knew it contained the gun. The jury, therefore, reasonably could have inferred from the defendant's possession of the gun that he obliterated the identification marks at some time prior to the early morning hours of the day in question. We, accordingly, conclude that the presumption contained in § 29-36 is not arbitrary, tenuous or unconstitutional as applied to the facts of this case.

IV

In his final claim, the defendant contends that the court improperly denied his motion to suppress unlawfully seized evidence. We do not agree.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Boyd*, 57 Conn. App. 176,

180, 749 A.2d 637, cert. denied, 253 Conn. 912, 754 A.2d 162 (2000).

A

The defendant claims that the state violated his rights under the fourth amendment to the United States constitution and article first, §§ 7 and 9, of the constitution of Connecticut when Radzimirski initiated the pursuit without a reasonable and articulable suspicion to justify an investigatory stop. The defendant argues that Radzimirski was acting on a hunch, or mere suspicion, because of the time of day and the character of the neighborhood, and that this was not enough to detain him. He contends that Radzimirski's reasons for stopping the defendant rested solely on the information he purportedly received from Nikola, but that Nikola did not know the defendant, did not see the defendant make a drug transaction, had no idea whether the defendant lived in the building and did not know where the door at the rear of the building led. He argues that he simply was in the wrong place at the wrong time and that the court's decision not to suppress evidence unlawfully seized was clearly erroneous. We disagree.

The following additional facts and procedural history are necessary for our resolution of the defendant's claim. The court conducted an evidentiary hearing on the defendant's motion to suppress and made findings of fact[8] on the basis of the evidence it deemed credible. The court did not consider the defendant's flight in determining whether the police officers had a reasonable and articulable suspicion to stop the defendant because the defendant did not flee until Radzimirski turned on his vehicle's flashing lights. The court did find, however, that "in light of the totality of circumstances, the general suspicion of illegal activity based on Nikola's observation became particularized on the

[8] The factual findings are summarized at the beginning of this opinion.

defendant and provided a reasonable and objective basis for Radzimirski to follow the defendant. There were specific and identifiable facts which, when taken together, warranted the officer's suspicion that the defendant was engaged in criminal activity." The court accordingly concluded that Radzimirski had a reasonable and articulable suspicion to detain the defendant.

"Under both the federal and state constitutions, police may detain an individual for investigative purposes if there is a reasonable and articulable suspicion that the individual is engaged in or about to engage in criminal activity. . . . A court reviewing the legality of a stop must examine the specific information available to the police officer at the time of the detention and any rational inferences that may be drawn therefrom." (Citation omitted; internal quotation marks omitted.) *State* v. *Rivera*, 56 Conn. App. 182, 185, 742 A.2d 387 (1999), cert. denied, 252 Conn. 927, 746 A.2d 791 (2000).

"The determination of whether a reasonable and articulable suspicion exists involves a two-part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. . . .

"Article first, §§ 7 and 9 of our state constitution permit a police officer in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes even though there is no probable cause to make an arrest. . . . In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . A court reviewing the legality of a stop

must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. . . . These standards, which mirror those set forth by the United States Supreme Court in *Terry* v. *Ohio*, [392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)], with regard to fourth amendment analysis, govern the legality of investigatory detentions under article first, §§ 7 and 9 of our state constitution. . . .

"Police have the right to stop for investigation short of arrest where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot. . . . [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . . [A] police officer's decision to detain an individual for investigatory purposes must be predicated on more than a mere hunch. . . . An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." (Citations omitted; internal quotation marks omitted.) *State* v. *Lipscomb*, 58 Conn. App. 267, 271–73, 753 A.2d 415, cert. granted, 254 Conn. 932, 761 A.2d 756 (2000).[9]

Although the reputation of an area as high crime, standing alone, does not justify an arbitrary stop, the police may take the type of area into account. *State* v. *Scully*, 195 Conn. 668, 678–79 n.15, 490 A.2d 984 (1985). "The character of the neighborhood and the officer's knowledge of narcotics distributions in the area may properly be considered." *State* v. *Moreland*, 23 Conn.

---

[9] Our Supreme Court granted certification to appeal on October 12, 2000, on the issue of whether an investigative stop of the defendant's vehicle was justified by reasonable suspicion.

App. 495, 497, 582 A.2d 212 (1990). Moreover, while flight is an appropriate consideration before the police attempt to stop a fleeing suspect; *State* v. *Groomes*, 232 Conn. 455, 471, 656 A.2d 646 (1995); flight is an inappropriate consideration where it was provoked by police conduct. *State* v. *Oquendo*, 223 Conn. 635, 655–56, 613 A.2d 1300 (1992).

"A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. . . . The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind." (Citations omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 239 Conn. 235, 247, 684 A.2d 1165 (1996).

We conclude that the court's factual findings concerning the motion to suppress were not clearly erroneous and that its legal conclusions find support in the record. The court properly found that it could not consider the defendant's flight in deciding whether the officers had a reasonable and articulable basis of suspicion because the defendant fled after Radzimirski activated his vehicle's flashing lights. The court also properly found that the officers were justified in harboring an initial generalized suspicion of illegal activity at the location, which became specific when Nikola observed several people walk into the alleyway toward the window of the house and make a transaction of some kind. The defendant's actions justifiably heightened Nikola's suspicion when the defendant walked through the alleyway, approached the window and said, "It's me," entered the house, exited the house carrying a plastic bag with something inside, returned to the alleyway entrance, looked up and down the street, placed the bag underneath his coat, reentered his car and began to back down Stratford Avenue in the wrong direction. Nikola

radioed his observations to Radzimirski, who could then rely on specific and identifiable facts that, together with rational inferences drawn therefrom, provided him with a particularized and objective basis for suspecting that criminal activity was afoot. See *State* v. *Waz*, 240 Conn. 365, 373 n.14, 692 A.2d 1217 (1997). Accordingly, the court's conclusions were legally and logically correct, and were properly supported by the facts set forth in its memorandum of decision.

The defendant argues that under the reasoning of two recent cases, *State* v. *Donahue*, 251 Conn. 636, 742 A.2d 775 (1999) (en banc), cert. denied, 531 U.S. 924, 121 S. Ct. 299, 148 L. Ed. 2d 240 (2000), and *State* v. *Lipscomb*, supra, 58 Conn. App. 267, the court had no basis for concluding that Meyer and Radzimirski had a reasonable and articulable suspicion to detain the defendant because the defendant's actions were as consistent with innocence as they were with criminal activity. We do not agree.

In *Donahue*, in which the defendant turned his vehicle abruptly into a deserted parking lot in the early morning in an area that had experienced a recent dramatic increase in crime, our Supreme Court concluded that the totality of the circumstances did not give rise to reasonable suspicion on the part of the arresting police officer because the defendant had not committed any traffic violation, had not been driving erratically and had not exhibited any furtive conduct or exited the vehicle. *State* v. *Donahue*, supra, 251 Conn. 647. Moreover, the vehicle itself had not been the subject of a police investigation. Id. In *Lipscomb*, in which the defendant stopped his car in an area that had a reputation for prostitution and picked up a woman whom one of the officers believed to be a prostitute, we held that the woman's actions of waving to the defendant and entering his car did not amount to furtive conduct warranting police intrusion. *State* v. *Lipscomb*,

supra, 58 Conn. App. 274. In each case, the court concluded that the observed behavior was not criminal and did not form the proper basis for a rational inference rising to the level of a reasonable suspicion.

Here, by contrast, we are persuaded that the defendant's presence in a known drug area, *in combination with* the apparent drug activity that preceded his arrival in the alleyway and his own questionable behavior thereafter, was sufficient to support the court's conclusion that the officers had a reasonable and articulable suspicion for an investigatory stop. We therefore reject the defendant's argument that his alleged actions were similar to the type of conduct observed by the police officers in *Donahue* and *Lipscomb*, and we conclude that the court properly denied the defendant's motion to suppress.

B

The defendant finally argues that the court improperly admitted the handgun into evidence because he did not abandon the handgun. He argues that the court should not have deemed the gun abandoned because his alleged actions were the direct result of an illegal attempt to detain him. We do not agree.

In its memorandum of decision on the motion to suppress, the court reasoned that "[t]he defendant was not coerced into dropping the items, nor were the items the fruit of an illegal stop. They were recovered after a stop based on reasonable suspicion and, as a result, the abandonment was not tainted. Therefore, the seizure of the discarded items was proper because the items were abandoned . . . [and] the defendant had no . . . privacy interest in the items."

"[W]here the presence of the police is *lawful* and the discard [of property] occurs in a public place where the defendant cannot reasonably have any continued

expectancy of privacy in the discarded property, the property will be deemed abandoned for purposes of search and seizure. . . . Conversely, where a person has disposed of property in response to . . . an *illegal* [seizure or search by police], courts have not hesitated to hold that property inadmissible." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Oquendo*, supra, 223 Conn. 658.

Because we agree with the court that the officers had a reasonable and articulable suspicion to detain the defendant, we also agree that the discarded gun was not the tainted fruit of an illegal search, as the defendant suggests, but abandoned property. Accordingly, the court properly admitted the gun into evidence, and we decline to address the defendant's final claim that the gun was not seized pursuant to a lawful arrest.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.