[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, ERVIN COTTEN, was arrested on June 2, 2000 in Norwich, CT and charged with possession of narcotics in violation of C.G.S. §21a-279 (a) and sale of narcotics in violation of C.G.S. § 21a-278
(b). The defendant filed a Motion to Suppress the evidence seized at the time of his arrest. The defendant claims that the police had no articulable facts upon which to base a reasonable suspicion to question the defendant. The defendant claims that the police officers did not have sufficient information to justify the investigative stop. CT Page 5122
An evidentiary hearing was held in this matter on April 9, 2001. Based on the facts set forth below and for the reasons set forth below, the Motion to Suppress is denied.
 FINDINGS OF FACT
One witness, Norwich Police Officer Anthony John, testified at the hearing on April 9, 2000. The Court credits the testimony of the officer and finds the following facts which were largely undisputed:
1. Officer Anthony John is a Norwich Police Officer with in excess of 20 years experience as an officer. He has received specialized training in narcotics investigations and has been assigned to the Narcotics Division "on and off" for six years.
2. At approximately 10:00 p.m on June 2, 2000, Officer John was assigned to investigate possible narcotics trafficking and other criminal activity in the City of Norwich. That night, he was assigned to perform "bar checks" in which he and other officers routinely checked local establishments for the presence of underage individuals or individuals for whom warrants were outstanding.
3. Earlier in the day he had received information from a reliable confidential informant ("CI") that an individual by the name of Ervin Cotten, whose street name was "Dre" would be in a bar later on that night and would be selling cocaine. The CI specified that the drug dealing would be occurring that night sometime after 8:00 p.m. The CI knew Cotten personally and had dealt with him in the past. The Officer testified that this CI had proven to be reliable and had previously provided information to law enforcement which had resulted in numerous seizures, arrests and convictions for narcotics violations.
4. In addition to the reliable CI information received on June 2, 2000, Officer John also received information from a concerned citizen ("CC") on the same date. The CC indicated that he/she had first hand knowledge regarding sales of cocaine at a bar called Chelsea Landing by certain individuals including, specifically, defendant Cotten. The CC stated that he/she personally had seen the drug dealing at Chelsea Landing a couple of days earlier.
5. Officer John was familiar with Chelsea Landing as a location known for criminal activity and where a shooting had recently occurred.
6. With this information, Officer John, together with several other officers, approached Chelsea Landing. As he arrived in a marked cruiser, Officer John recognized what he thought was an Oldsmobile with CT Page 5123 Massachusetts license plates parked outside the establishment. He had seen the vehicle earlier that day at 104 Boswell Ave., Cotten's address, and he knew from prior experience that this was a vehicle used by Cotten.
7. Officer John then went into the bar, along with Sergeant Daigle and Detective Ladd of the Norwich Police Department. The lighting was dark, but he believed he saw Cotten seated at the bar between two other individuals. One of these individuals was well known to Officer John as a cocaine user with a substance abuse problem, and the other was also known to him as a target of a search warrant which was going to be executed on Summer Street in Norwich. In order to confirm that the individual he believed to be Cotten was in fact Cotten, Officer John asked him for identification. The defendant provided a Connecticut identification card with his (Cotten's) name on it.
8. Knowing this, the Officer wished to further investigate the information he had received from the CI and the CC. Officer John wanted to speak with Cotten away from the bar and from the other individuals for safety reasons. For this reason, he asked Cotten to step away from the bar. Upon this request, Cotten immediately placed his right hand in his front pocket. The Officer's sensitivity was immediately heightened and he reasonably held a concern for his safety particularly inside a darkened bar where a shooting had recently occurred. Based on over 20 years of experience, Officer John had reasonable concerns that the defendant might be armed. When he saw the defendant place his hand into his pocket, he immediately believed "it was either drugs or a gun." Fearing for his safety, he had the defendant remove his hand from his pocket and performed a patdown of the defendant outside the pants' pocket.
9. Officer John employed an open, flat-handed pat down of the exterior of the defendant's clothing. Through the defendant's clothing, Officer John felt an object in the defendant's pocket which, in his experience, he believed to be a package containing smaller prepackaged amounts of cocaine. He had previously performed similar patdowns and knew how drugs packaged in this manner felt. He removed the item, observed it, and confirmed that it was 14 pieces of cocaine individually wrapped in sandwich-type baggies and then placed into one larger bag. The defendant was then arrested.
 DISCUSSION
"[A] person [is defined] as seized under our state constitution when by means of physical force or a show of authority, his freedom of movement is restrained." State v. Donahue, 251 Conn. 636, 642-43 (1999) (Internal citations omitted). "Article first, §§ 7 and 9 of our state CT Page 5124 constitution permit a police officer in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes even though there is no probable cause to make an arrest. In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . A court reviewing the legality of the stop must, therefore, examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom." (Internal citations and internal quotation marks omitted.) State v. Donahue, 251 Conn. at 634-44.
When a reasonable and articulable suspicion exists, the detaining officer may conduct an investigative stop of the suspect in order to confirm or dispel his suspicions. Terry v. Ohio, 392 U.S. 1, 30-31
(1968). During the course of a lawful investigatory detention, if the officer reasonably believes that the detained individual might be armed and dangerous, he or she may undertake a patdown search of the individual to discover weapons. State v. Trine, 236 Conn. 216, 223-24 (1996); Statev. Kyles, 221 Conn. 643, 660-61 (1992); State v. Lamme, 216 Conn. 172,184 (1990).
"Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion." State v.Torres, 230 Conn. 372, 379 (1994) (citation omitted). The police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. State v. Daeria, 51 Conn. App. 149, 155 (1998); State v.Watson, 165 Conn. 577, 584-85 cert. denied, 416 U.S. 960 (1974). This standard contains two elements. First, the assessment must be based upon all the circumstances, including objective observations made by the detaining officer and the information available to the officer. Second, the assessment must raise a suspicion that the particular individual or individuals being stopped are, or are about to be, engaged in wrong doing. State v. Cofield, 220 Conn. 38, 44-47 (1991); State v. Scully,195 Conn. 668, 674-75 (1985).
A warrantless seizure of non-threatening contraband, detected during a valid patdown search or frisk of a criminal suspect, is reasonable for purposes of fourth Amendment analysis, provided that the officers sense of touch makes it immediately apparent that the object felt is contraband.Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); see State v. Trine,236 Conn. 216, 223-27 (1996) (same result under article first, § 7, of the state constitution). The frisk must remain within the bounds of CT Page 5125 the weapons frisk permitted by Terry. Id.
The defendant argues that the stop was made by police officers who did not possess the requisite reasonable and articulable suspicion that the defendant had engaged or was engaging in illegal activity. He argues that the officers observed no conduct whatsoever between the defendant and anyone else which would support a finding of reasonable and articulable suspicion and that the officers observed no conduct which could lead the officers to conclude that criminal activity may be afoot.
The defendant's reliance on State v. Lipscomb, 58 Conn. App. 267
(June, 2000) is misplaced. In Lipscomb, the Connecticut Appellate Court found that police officers did not have a reasonable and articulable suspicion sufficient to warrant an investigative stop when they observed the defendant pick up a woman whom they believed to be a prostitute. The Appellate Court found that the inference that the defendant's passenger was a prostitute was tenuous at best and that the woman's conduct in waving her arms and getting into his car did not qualify as an objective manifestation of criminal activity sufficient to warrant an investigative stop. Here Officer John was not drawing a tenuous inference; he was acting on the basis of his knowledge and experience and information provided by both a reliable CI and a concerned citizen.
The initial stop was justified based on the specific and timely information provided by the confidential informant and the concerned citizen. Clearly, corroboration of an informant's tip may give rise to reasonable and articulable suspicion. State v. Anderson, 24 Conn. App. 438,441, cert. denied, 219 Conn. 903 (1991). Here, the information provided by the concerned citizen certainly corroborated the information provided by the CI. Thus, at the time the officer initially approached the defendant at Chelsea Landing, he had available to him specific information from the CI to the effect that the defendant would be selling cocaine that very night at a bar and he knew that information was corroborated by the CC who stated that he/she had personally seen that individual dealing cocaine at Chelsea Landing within the last few days. This information, and the rational inferences to be derived therefrom, warranted the initial intrusion. State v. Oquendo, 223 Conn. 635, 654
(1992).
The subsequent patdown was justified based on Officer John's observations, specifically, the defendant's reach into his pocket when asked to step away from the bar. As set forth in State v. Watson,165 Conn. 577, 585:
 The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's CT Page 5126 mind. If the latter is the case, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances.
Here, Officer John's suspicions became confirmed and further aroused as he observed defendant Cotten. This was reasonable in the circumstances presented here where the individual was in a darkened bar at night where a shooting had recently occurred. Thus defendant's reliance on Watson is therefore, also unavailing. Moreover, the patdown here did not exceed the "strictly circumscribed scope of a lawful patdown search for weapons."State v. Trine, 236 Conn. at 226.
The specific and articulable facts as set forth above, taken together with the rational inferences derived from those facts, reasonably warranted the intrusion in this case. Terry v. Ohio, 392 U.S. 1
(1968).[1]
In view of all the evidence, the Court finds that the officers had a reasonable and articulable suspicion that justified the stop and ultimate patdown of the defendant in Norwich, CT on June 2, 2000.
For the foregoing reasons, the motion to suppress is DENIED.
Jongbloed, J.